# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| PHOENIX HELIPARTS, INC., | Case No. 2:15-bk-12003-DPC |
| Debtor. | |
| Now Substantively Consolidated with PHOENIX HELI-SUPPORT, L.L.C. | **ORDER CONFIRMING THE TRUSTEE'S FIRST AMENDED PLAN OF LIQUIDATION DATED MAY 2, 2016** |

This matter came before the Court on May 26, 2016 for a hearing (the "Confirmation Hearing") on confirmation of the *Chapter 11 Trustee's First Amended Liquidation Plan* (Dkt. # 433) (the "Plan") which was filed by Louie Mukai, the Chapter 11 Trustee ("Trustee"), in the Phoenix Heliparts, Inc., substantively consolidated with Phoenix Heli Support, LLC (collectively, "PHP" or the "Debtor") case.   (A copy of the Plan (as amended) is attached to this confirmation order (the "Confirmation Order") as Exhibit A.)

After due and proper notice, one limited objection (Dkt. # 456) was filed to confirmation of the Plan by the Official Committee of Unsecured Creditors. That objection was resolved for the reasons stated on the record at the Confirmation Hearing.

The Court has also considered the oral testimony of Trustee Louie Mukai at the Confirmation Hearing. The Court finds that each of the requirements for plan confirmation stated in Bankruptcy Code § 1129 has been satisfied with respect to the Plan.

The Court has considered (i) all of the pleadings with respect to confirmation of the Plan filed by the Trustee and the Official Committee of Unsecured Creditors (ii) the *Declaration Of Louie Mukai in Support of Confirmation of Trustee's Amended Liquidation Plan* (Dkt. # 462) submitted by the Trustee, (iii) the statements and argument of counsel for all parties at the Confirmation Hearing,

(iv) the Plan, (v) the Disclosure Statement (as approved by the Court (Dkt # 440), (vi) the Ballot Report (Dkt. # 461)(the "Ballot Report"), and (vii) the entire record in this Chapter 11 Case. Based on the Court's findings and rulings on the record at the Confirmation Hearing and the Findings and Conclusions (all of which are by this reference incorporated herein) and the entire record before the Court; and good and sufficient cause appearing,

IT IS HEREBY ORDERED as follows:

1. **Confirmation of Plan.** The Plan attached hereto as Exhibit A and each of its provisions, together the modifications to the Plan and Liquidation Trust Agreement set forth in this Confirmation Order, is approved and confirmed under Bankruptcy Code § 1129 as provided herein, and the Plan is incorporated into this Confirmation Order by this reference. The Plan as confirmed by this Confirmation Order shall be binding on all parties as provided under Bankruptcy Code §1141(a).

2. **Modification to Plan.** The Plan is hereby amended to add the following with respect to the treatment of Holders of a Class 4 Claim. The Liquidation Trustee, and all allowed claimholders and parties in interest shall retain the right to object to an Insider Claim based on any of the grounds set forth in Class 4 subparagraph (a). If the Trustee or other objecting party is successful in any such Objection then the treatment of a Class 4 Claim shall remain as provided in the Plan. If the Objection(s) are disallowed, then such Holders shall be entitled to treatment as a Class 2 General Unsecured Claim.

3. **Liquidation Trust Agreement.** The Liquidation Trust Agreement is approved as attached to this Confirmation Order as Exhibit B.

4. **Authorization to Consummate Plan.** Prior to occurrence of the Effective Date, the Trustee is authorized and empowered to execute and deliver the Liquidation Trust Agreement (substantially in the form attached hereto as Exhibit B), subject to such amendments as may be agreed to by the parties thereto, but only if such amendments are consistent with the Plan as confirmed by this Confirmation Order. Further, the Trustee and his respective employees, attorneys, agents, and representatives are authorized and empowered to take all actions necessary or appropriate to consummate the transactions contemplated by the Plan and to perform thereunder. The Plan, the

Liquidation Trust Agreement, and the transactions contemplated therein shall be binding on all parties pursuant to this Confirmation Order and Bankruptcy Code § 1141(a).

5. **Resolution of Plan Objections.** The objection from the Official Committee of Unsecured Creditors has been resolved as provided on the record at the Confirmation Hearing. There were no other objections to confirmation of the Plan.

6. **Provisions of Plan and Order Non-Severable and Mutually Dependent**. The provisions of the Plan and this Confirmation Order, including the Findings and Conclusions incorporated herein by reference, are non-severable and mutually dependent, and are deemed fully incorporated by reference in each other.

7. **Vesting of Assets.** Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, title to all property of the Estate and the Debtor shall vest in the Liquidation Trust as provided in Section VII of the Plan.

8. **Preserved Litigation Claims.** In accordance with Bankruptcy Code § 1123(b), and except as provided otherwise in the Plan or this Confirmation Order, all remaining causes of action of the Estate are will be transferred to and vested in the Liquidation Trust as of the Effective Date. Except as otherwise provided in the Plan or this Confirmation Order, after the Effective Date, the Liquidation Trustee shall be deemed the Estates' representative in accordance with Bankruptcy Code § 1123 and shall have the exclusive right to institute, prosecute, abandon, settle or compromise any causes of action, in accordance with the terms of the Plan and the Liquidation Trust Agreement and without further order of the Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. This provision specifically excludes any causes of action preserved for the benefit of TKC Aerospace ("TKCA") pursuant to the terms of this Court's Sale Order dated April 1, 2016 (Dkt. #374). Nothing set forth herein grants the parties to pending Reish/Ryuko claim dispute any lesser or greater rights than they currently hold.

9. **Term of Injunctions or Stays.** Unless otherwise provided in the Plan, this Confirmation Order or a separate order from the Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

10. **Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code § 1146(a), the transactions to occur after entry of the Confirmation Order and on or about the Effective Date (or otherwise pursuant to the Plan) and any other transfers or transactions in furtherance of, or in connection with the Plan, will constitute a "transfer under a plan" within the meaning of Bankruptcy Code §1146 and will not be subject to any stamp, real estate transfer, mortgage recording, or other tax. Any sale transactions consummated by any of the Debtor and approved by the Bankruptcy Court on and after the Petition Date, through and including the Effective Date, including, without limitation, the Sale approved by the Sale Order and the transfers effectuated under the Plan or the Liquidation Trust Agreement, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording, or other tax.

11. **Approval of Release, Injunctive and Related Provisions of the Plan.** The release, exculpation, injunctive, and other provisions of Sections X and XI of the Plan are hereby approved in all respects.

12. **Approval of Assumption or Rejection of Executory Contracts and Leases.** This Confirmation Order constitutes: (i) the approval under Bankruptcy Code § 365 of the assumption of the executory contracts and unexpired leases assumed under the Plan or otherwise during the Bankruptcy Case; and (ii) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under the Plan or otherwise during the Bankruptcy Case.

13. **Standing.** From and after the Effective Date, the Liquidation Trustee will have standing, under state and/or federal bankruptcy law or otherwise, to file, litigate and settle the any remaining causes of action as provided in the Plan and the Liquidation Trust Agreement.

14. **Professional Compensation Claims.** Pursuant to this Court's order dated April 29, 2016, (Dkt. #430) the bar date of May 31, 2016 was established as the last date to file applications for Administrative Claims in this case. Any Professional asserting a Claim and right of payment for

Professional Compensation must file with the Court a final fee application and request for allowance and payment of such Claim for Professional Compensation on or before this date. Any holder of such an Administrative Claim that fails to file a request for payment by the Administrative Expense Claims Bar Date shall be forever barred from asserting an Administrative Claim against the Debtor, the Estates, their successors and assigns, and their assets.

15. **Bar Date for Rejection Damage Claims.** Claims created by or arising from the rejection of executory contracts or unexpired leases pursuant to Section VI of the Plan, or the rejection, expiration or termination of any executory contract or unexpired lease prior to the Effective Date (other than Claims barred pursuant to the Claims Bar Date), must be filed with the Court and served on the Debtor and the Liquidation Trustee no later than thirty (30) Case days after the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan or this Confirmation Order. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Section IV of the Plan.

16. **Resolution of Claims.** Unless otherwise ordered by the Court after notice and a hearing, the Liquidation Trustee shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make, file, prosecute, settle, compromise, withdraw or resolve objections to Claims or Equity Interests. The costs of pursuing the objections to Claims and Equity Interests shall be borne by the Liquidation Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims and disputed Equity Interests shall be litigated to a Final Order except to the extent the Liquidation Trustee elects to withdraw any such objection or the Liquidation Trustee and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim or

disputed Equity Interests without approval of the Court in accordance with the terms of the Plan and Liquidation Trust Agreement.

17. **Retention of Jurisdiction.** Pursuant to Bankruptcy Code §§ 105(a) and 1142, and except as otherwise expressly provided in the Plan or this Confirmation Order, the Court shall retain jurisdiction as provided in Section XII of the Plan over all matters arising under or out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law. The Liquidation Trust Agreement and this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court to confirm the Plan and approve the Liquidation Trust Agreement in their entirety as modified in this Confirmation Order. The provisions of the Plan, the Liquidation Trust Agreement, and this Confirmation Order shall be construed in a manner consistent with each other so as to accomplish the purposes of each, provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and control. Notwithstanding the foregoing, if there is determined to be any inconsistency between the Liquidation Trust Agreement, on the one hand, and any Plan provision or any provision of this Confirmation Order on the other that cannot be reconciled, then the provisions of the Plan and/or this Confirmation Order shall govern and control.

18. **Confirmation Date.** The Confirmation Date is the date the Court enters this Confirmation Order on its electronic docket.

19. **TKCA Claim.** Pursuant to the Plan (and prior orders), TKCA holds a Class 2 Allowed Claim for $11,500,000. TKCA shall receive no distributions on account of its Allowed Class 2 Claim until the Threshold amount to TKCA is reached, as defined in the Plan. Pursuant to the Plan (and prior orders), TKCA holds a Class 3 Allowed Claim for $8,500,000, which is subordinated to certain claims as set forth in the Plan.

20. **Liquidation Committee.** As set forth in the Liquidation Trust Agreement, the Liquidation Trust Committee shall consist of three members. The initial members shall be: Adam Sapir-Stein, as representative of the Unsecured Creditors' Committee, Race McCleery of TCKA, and Louie Mukai as Liquidation Trustee.

-6-

21.     Furthermore, notwithstanding anything herein to the contrary, at the initial Liquidation Committee ("LC") meeting, the Liquidating Trustee shall identify all potential claim objections he intends to file and shall obtain LC approval of same. If any Committee Member wishes to file and prosecute a claim objection that the Liquidating Trustee does not intend to pursue, it may do so at its own cost and expense.  Any settlement of such an objection shall still be subject to bankruptcy court approval and an opportunity for notice and hearing.

22.     **Correction of Errors and Inconsistencies.** After the Confirmation Date and before substantial consummation of the Plan as defined in Bankruptcy Code § 1101(2), the Trustee and the Liquidation Trust may, under Bankruptcy Code § 1127(b), institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Liquidation Trust Agreement, or this Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan.

DATED AND SIGNED ABOVE

APPROVED AS TO FORM AND CONTENT:

*Engelman Berger, PC*

By /s/Steven N. Berger, Bar no. 009613
    Steven N. Berger

*Goldstein, Horner & Horner, Attorneys PLLC*

By /s/H. Lee Horner, Jr.,        Bar no. 022791
    H. Lee Horner, Jr.

*Law Offices of Michael W. Carmel, Ltd.*

By /s/Michael W. Carmel, Bar no. 00735
    Michael W. Carmel

| | |
|---|---|
| 1 | *Quarles & Brady, LLP* |
| 2 | By /s/Kelly Singer, Bar no. 022024 |
| 3 |     Kelly Singer |
| 4 | *Cross Law Firm* |
| 5 | By /s/James E. Cross, Bar no. 9063 |
| 6 |     James E. Cross |

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re | Chapter 11 |
| PHOENIX HELIPARTS, INC., | Case No. 2:15-bk-12003-DPC |
| NOW SUBSTANTIVELY CONSOLIDATED WITH PHOENIX HELI SUPPORT, L.L.C. | |
| Debtor. | |

# CHAPTER 11 TRUSTEE'S FIRST AMENDED LIQUIDATION PLAN

## Proposed By:

## Mr. Louie Mukai, Chapter 11 Trustee
## Dated May 2, 2016

Prepared by
James E. Cross, Esq.
Cross Law Firm, P.L.C.
1850 N. Central Ave. Suite 1150
Phoenix, AZ 85004
jcross@crosslawaz.com

**Attorneys for Louie Mukai, Chapter 11 Trustee**

# TABLE OF CONTENTS / ADVISORY STATEMENT

I.  INTRODUCTION TO THE PLAN.................................................................................1

II.  DEFINITIONS .........................................................................................................2

III.  CLASSIFICATION OF CLAIMS AND INTERESTS.....................................................8

IV.  TREATMENT OF ALLOWED CLAIMS ....................................................................10

V.  REQUEST FOR CONFIRMATION AS TO CLASSES REJECTING PLAN ..............13

VI.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES........13

VII.  IMPLEMENTATION OF THE PLAN ........................................................................14

VIII.  CONDITIONS PRECEDENT TO CONFIRMATION/RESERVATION OF RIGHTS.15

IX.  DETERMINATION OF CLAIMS ..............................................................................16

X.  DISCHARGE OF THE CHAPTER 11 TRUSTEE.......................................................17

XI.  MISCELLANEOUS ..................................................................................................17

XII.  RETENTION OF JURISDICTION..............................................................................20

## ADVISORY STATEMENT to the READER:

This First Amended Liquidation Plan ("Plan") has been filed with the Court as a Proposed Plan, along with a proposed First Amended Disclosure Statement ("Disclosure Statement") pertaining hereto. This Plan should be read in conjunction with the accompanying Disclosure Statement.

Until the filed Disclosure Statement is approved by an order of the Bankruptcy Court, the filing of this Plan or service of this Plan on you are not intended to be and should not be construed as a solicitation by any person to vote for or against this Plan.

i

# I. __INTRODUCTION TO THE PLAN.__

Phoenix Heliparts, Inc. ("Debtor" or "PHP") filed a voluntary petition commencing a bankruptcy case under chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") on September 18, 2015 (the "Filing Date") under Case No. 2: 15-bk-12003-DPC (the "Bankruptcy Case").

Louie Mukai, the current Chapter 11 trustee ("Trustee") proposes this Plan subsequent to the sale of substantially all estate assets to creditor TKC Aerospace ("TKCA") TKCA has withdrawn the Plan it previously filed in this case and is endorsing this Plan. As set forth below, the Trustee's Plan seeks to accomplish the following:

A sale of the assets of PHP occurred pursuant to an order of the bankruptcy court on April 1, 2016 ("Sale Order"). The sale closed on April, 5 2016.. Prior to the Sale the bankruptcy court entered its order substantively consolidating the debtor's affiliate, Phoenix Heli Support, L.L.C. ("PHS") with the debtor.

However, the Trustee believes that the pursuit of a malpractice/disgorgement action against the law firm of Dickstein Shapiro ("Malpractice Action") shall result in additional payments to unsecured creditors that shall increase the return to unsecured creditors.

The Sale Order provided that all secured creditors were paid in full from the cash proceeds of $1,600,000. Therefore, there are no longer any secured creditors in this bankruptcy case.

The Trustee's First Amended Plan shall accomplish the following:

- establishment of a Liquidation trust to provide for payment of distributions from such trust to all Allowed Claims in accordance requirements set forth in the Bankruptcy Code,

- cancellation of existing equity interests in the Debtor,

Agreed subordination of distributions to TKCA as provided for herein.

- upon confirmation, the role of the Chapter 11 Trustee shall convert to that of Liquidation Trustee for the remaining estate assets of PHP and PHS and for distribution of all estate assets pursuant to the Liquidation Trust established herein. Upon confirmation, there shall be a Liquidation Committee established to provide the Trustee with input regarding the Plan. The

1

members of the Liquidation Committee shall be the Liquidation Trustee, a representative selected by the Official Committee of Unsecured Creditors ("Committee") and a representative of TKCA (or its nominee). The Committee shall cease to exist and shall be disbanded upon entry of the order confirming the Plan.

• the Liquidation Trustee will, as described more fully below, collect the outstanding accounts receivable, collect the refund of approximately $680,000 from the Republic of Korea ("ROK") Performance Bond, pursue actions arising under Chapter 5 of the Bankruptcy Code not transferred to TKCA pursuant to the Sale Order, seek disgorgement of fees from Dickstein Shapiro, LLP, and resolve any disputed Proof of Claims and pursue such other claims and actions as authorized by the Bankruptcy Code or this Plan. Further, the Trustee shall reject all executory contracts not assumed and assigned to TKCA pursuant to the TKCA Asset Purchase Agreement ("APA"). The Trustee does not believe there will be any damage claims asserted for the rejection of the remaining executory contracts.

## II.  **DEFINITIONS.**

Capitalized terms used in this Plan will have the meanings given to them as set forth below. If a capitalized term is not defined in this Plan, it shall have the meaning given to it in the Disclosure Statement approved by Court in conjunction with this Plan. If not defined in the Plan or Disclosure Statement, then the meaning of any such term shall be determined with reference to the Bankruptcy Code, the Bankruptcy Rules, or the Federal Rules of Bankruptcy Procedure. This Plan is submitted pursuant to Bankruptcy Code § 1121(c)(1) and Bankruptcy Rule 3016.

The following terms, when used in this Plan (or used in the Disclosure Statement accompanying this Plan), shall have the meanings given below unless the context otherwise requires.

1. **Administrative Expense Claims** shall mean: (a) every cost or expense of administration of the Reorganization Case, including any actual and necessary post-petition expenses of preserving the Estate; (b) any actual and necessary post-petition expenses of the Debtor; (c) any professional fees allowed by the Bankruptcy Court pursuant to interim and final approvals in

2

accordance with Bankruptcy Code §§ 330, 331 and 503(b); and (d) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2. **Administrative Claims Bar Date** shall mean that date set by order of the bankruptcy court as the last day to file an application for allowance of an Administrative Claim. **Such date being May 31, 2016, pursuant to order dated April 29, 2016 (Dkt. #430).**

3. **Allowed Claim** shall mean every Claim against the Bankruptcy Estate as to which a proof of such Claim has been filed within the Claims Bar Date (or appropriate application as to Administrative Expense Claims) and: (i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Plan or the Bankruptcy Court; or (ii) as to which the order allowing such Claim has become final and non-appealable without any appeal, review, or other challenge of any kind to that order having been taken or being still timely. Any creditor whose claim is listed on the Schedules of the Debtor and Amendments thereto (Docket Nos. 62 and 92, respectively) and is undisputed, liquidated and not contingent shall be treated without further act by such creditor as a member of the appropriate Class of creditors set forth in the Plan and Disclosure Statement. If any Claim or the Creditor asserting such Claim is subject to any defense, setoff, counterclaim, recoupment, or other adverse Claim of any kind of the Debtor, including, but not limited to, any pending appeal or unexpired right to appeal, that Claim will be deemed a Disputed Claim and it will not become an Allowed Claim unless and until all disputes are resolved or adjudicated fully and finally, with all appellate rights having been exhausted.

4. **Asset Purchase Agreement ("APA")** shall mean that certain agreement approved by the bankruptcy court pursuant to the Sale Order and dated April 5, 2016.

5. **Ballot** shall mean the form upon which creditors entitled to vote on the Plan shall indicate a decision to vote to accept or reject the Plan.

6. **Bankruptcy Case** shall mean the case filed in the U.S. Bankruptcy Court, District of Arizona under Case No. 2:15-bk-12003-DPC, captioned *In re Phoenix Heliparts, Inc., Debtor* now Substantively Consolidated with Phoenix Heli Support, L.L.C.

3

7. **Bankruptcy Code** shall mean Title 11 of the United States Code, 11 U.S.C. §101 et. seq., and related provisions under Title 28 and Title 15, U.S. Code, as they may be amended from time to time.

8. **Bankruptcy Court or Court** shall mean the United States Bankruptcy Court for the District of Arizona or such other court that exercises jurisdiction over all or part of the Reorganization Case including the United States District Court for the District of Arizona to the extent that the reference of the Reorganization Case is withdrawn.

9. **Bankruptcy Estate or Estate** shall mean the estate created pursuant to 11 U.S.C. §541 upon the Debtor's filing of the Reorganization Case. This definition includes all assets and liabilities of PHS.

10. **Bankruptcy Rules or Rules** shall mean the Federal Rules of Bankruptcy Procedure.

11. **Bankruptcy Sale** shall mean a sale conducted pursuant to the provisions of 11 U.S.C. §363. Such sale was approved by the Bankruptcy Court by order dated April 1, 2016.

12. **Business Day** shall mean every day except Saturdays, Sundays, and federal and state holidays observed by the Bankruptcy Court.

13. **Causes of Action** shall mean all of the Bankruptcy Estate's existing and potential claims and causes of action, including but not limited to any claims that may be brought under the Bankruptcy Code and applicable state law, and causes of action that were pending or could have been brought by the Debtor at the Filing Date. This definition is limited by the terms of the Asset Purchase Agreement and Sale Order. It also includes any claims against former management or equity holders not assigned to TKCA pursuant to the terms of the Sale Order.

14. **Chapter 11 Trustee** shall mean Louie Mukai, as appointed by Court Order dated October 22, 2015 [Dkt. 104], or any successor trustee appointed by the Bankruptcy Court.

15. **Claim** shall mean "Claim" as defined in Bankruptcy Code §l01(5).

16. **Claims Bar Date** shall mean the date set by the Bankruptcy Court by which creditors are required to file proofs of claim. **Such date being December 30, 2015.**

17.     **Claims Objection Date** shall mean the date by which the Trustee, the Reorganized Debtor, or any interested party must file objections to Claims, which shall be the first Business Day after 90 days after the Effective Date.

18.     **Class** shall mean each of the classifications of Claims and Interests described in the Plan.

19.     **Confirmation Hearing** shall mean the hearing(s) held by the Court to consider confirmation of this Plan pursuant to 11 U.S.C. §1129.

20.     **Confirmation Order** shall mean the order entered by the Bankruptcy Court approving this Plan.

21.     **Contingent Claim** shall mean any claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not become an Allowed Claim on or before the Confirmation Date.

22.     **Creditor** shall mean "Creditor" as defined in Bankruptcy Code §101(10), 11 U.S.C. §101(10), and will include every holder of a Claim, whether or not such Claim is an Allowed Claim.

23.     **Critical Vendor** shall mean those unsecured creditors who have been paid during the course of this Chapter 11 proceeding either a portion or the full amount of their Allowed Unsecured Claim.

24.     **Debtor** shall mean Phoenix Heliparts, Inc., an Arizona corporation.

25.     **Dickstein Shapiro Claim** shall mean the putative malpractice or disgorgement claim or action that will be filed and pursued by the Liquidation Trustee on behalf of the Liquidation Trust. Prior to Confirmation, such claim may be filed and pursued by the Chapter 11 Trustee on behalf of the Bankruptcy Estate.

26.     **Disclosure Statement** shall mean the Disclosure Statement proposed by Trustee, inclusive of any exhibits, addenda, amendments and supplements thereto, that has been approved by the Bankruptcy Court pursuant to Bankruptcy Code §1125 and Bankruptcy Rule 3017.

27.     **Disputed Claim** shall mean every Claim that is not an Allowed Claim.

28.     **Effective Date** shall mean a date selected by Trustee that is at least fourteen (14) but no later than forty-five (45) days after the date on which the Confirmation Order becomes final and non-appealable.

29.     **Equity Interest or Interest** shall mean any ownership interest in the Debtor or PHS represented by the membership interest in such entity, or any Claim that has been reclassified by a Final Order as an Equity Interest, and any rights to any dividends or distributions as a result of such respective ownership interest.

30.     **Executory Contract** shall mean every unexpired lease and other contract that is subject to being assumed or rejected under Bankruptcy Code §365, 11 U.S.C. §365.

31.     **Filing Date** shall mean September 18, 2015, being the date on which the Debtor filed its voluntary petition in the United States Bankruptcy Court for the District of Arizona under Chapter 11, Title 11 of the United States Code.

32.     **Final Order** shall mean an order of judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended, and as to which the time to appeal from or to seek review or rehearing of, shall have expired, and as to which no appeal or petition for review, or rehearing is pending, or if appealed from, shall have been affirmed and no further hearing, appeal or petition can be taken for granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

33.     **General Unsecured Claim** shall mean every allowed Unsecured Claim which is not an Administrative Expense Claim, Priority Unsecured Claim, or a Claim classified within any other Class under this Plan.

34.     **Insider Claims** shall mean the Claims of any and all persons that are "insiders" as defined in 11 U.S.C. § 101(31).

35.     **Intercompany Claims** shall mean all claims of PHP against PHS for amounts due and owing to PHP, and all claims of PHS against PHP for amounts due and owing to PHS. These claims have been eliminated as a result of the Substantive Consolidation Order.

36. **Liquidation Trust** shall mean the liquidating trust established pursuant to the terms of this Plan to liquidate all remaining assets not sold pursuant to the Sale Order for the purpose of making distributions to allowed claims of creditors under this Plan.

37. **Liquidation Trustee** shall mean Louie Mukai, C.P.A. or such other person or entity that may be appointed successor pursuant to the terms of the Liquidating Trust.

38. **Official Committee of Unsecured Creditors** shall mean the Official Committee of Unsecured Creditors established pursuant to the Notice of Appointment dated February __, 2016 filed by the Office of the United States Trustee at Dkt. #---.

39. **PHP** shall mean the Debtor, Phoenix Heliparts, LLC, an Arizona limited liability company.

40. **PHS** shall mean Phoenix Heli Support, LLC, an Arizona limited liability company.

41. **Plan or Proposed Plan** shall mean this Trustee's First Amended Plan of Liquidation Dated May 2, 2016,, as the same may be amended or modified from time to time.

42. **Plan Interest Rate** shall mean the interest rate payable under the Plan by the Liquidation Trust on Allowed Claims classified in a Class providing for payment of interest, being 5.00% per annum, simple interest, or such other rate determined by the Bankruptcy Court at the Confirmation Hearing. Such rate shall only be paid in the event there is a one hundred percent (100%) distribution to Allowed Claims under this Plan.

43. **Post Confirmation Claims** shall mean any and all rights, causes of action and other claims which may currently exist in the Debtor's estate and which, upon Plan Confirmation, shall be transferred to the Liquidation Trust for the benefit of all Allowed Claim holders. These include, but are not limited to, all claims reserved for the benefit of the bankruptcy estate pursuant to the Sale Order and Asset Purchase Agreement dated April 5, 2016.

44. **Post Confirmation Recoveries** shall refer to all monetary proceeds resulting from the liquidation of estate claims and other recoveries authorized pursuant to the terms of this Plan.

45. **Secured Claim** shall mean every Claim against the Debtor (including every secured portion of a Claim which is not fully secured) that is asserted by the Creditor holding such Claim to

be secured by a lien, security interest, or assignment encumbering property in which the Debtor holds an interest; provided, however, that such Claim will be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such Claim against such property of the Debtor. It is the Plan Proponent's belief that there are no longer any secured claims in the bankruptcy case.

46. **Sale Order** shall mean that order entered by the bankruptcy court on April 1, 2016 at Dkt. #374.

47. **State Court Action** shall mean the litigation commenced by TKCA against PHP on October 20, 2011, Case No. CV2011-018889 in the Arizona Superior Court, County of Maricopa, in which the TKCA Judgment was entered. Such litigation has now been settled pursuant to a settlement between the Trustee and TKCA pursuant to an order approving the TKCA Claim Settlement dated April 5, 2016 (Dkt. #387)

48. **Substantive Consolidation Order** shall mean that order entered by the bankruptcy court on March 11, 2016 [Dkt. 49 in Adv. 2:16-ap-00013-DPC] substantively consolidating the Debtor, PHP with its affiliate, PHS.

49. **TKCA** shall mean TKC Aerospace, Inc., an Alaska corporation.

50. **TKCA Judgment** shall mean the Judgment entered on May 21, 2015, in the State Court Action in favor of TKCA and against PHP in the amount of $26,051,844.21, plus accrued and accruing interest and other accruals thereunder.

51. **TKCA Claim Settlement** shall mean that settlement regarding the priority and amount of TKCA's claim pursuant to the order of the bankruptcy court dated April 5, 2016 at Dkt. #387.

III. <u>**CLASSIFICATION OF CLAIMS AND INTERESTS.**</u>

All Claims and Interests, including but not limited to, all Administrative Expense Claims, Secured Claims, General Unsecured Claims, Subordinated Claims, Inter-Company Claims, and Equity Interests are classified under this Plan as set forth in this Article. At the time of the

8

Confirmation Hearing, any Class that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deleted from the Plan with respect to voting on confirmation of the Plan. Any creditor whose claim is listed on the Schedules of the Debtor and Amendments thereto (Docket Nos. 62 and 92, respectively) and is undisputed, liquidated and not contingent shall be treated without further act by such creditor as a member of the appropriate Class of creditors set forth in the Plan and Disclosure Statement. All existing claims of creditors, whether pre-petition or post-petition, shall be released in exchange for the distributions under the Liquidation Trust   The Classes of Claims are as follows:

**Class A – Administrative Priority Claims.**  Class A shall consist of the Allowed Administrative Priority Claims.

**Class 1 – Priority Unsecured Claims.**  Class 1 shall consist of the Allowed Claims of holders of unsecured claims entitled to priority under Bankruptcy Code Sections 507(a), and may be subdivided into subclasses based on the nature of such claims as, e.g., employee claims, tax claims, or other claims that may be filed and be Allowed Claims having priority under the subsections of Bankruptcy Code Section 507(a).

**Class 2 – General Unsecured Claims.**  Class 2 shall consist of the Allowed Claims of all General Unsecured Creditors, except the TKCA Subordinated Claim, any Allowed Claims of Insiders which are separately classified under the Plan.

**Class 3 – TKCA Subordinated Claim.**  Class 3 shall consist of only the subordinated portion of the TKCA Allowed Claim.  TKCA has an allowed general unsecured claim of $20,000,000.00 ("TKCA's Allowed Claim"), which is a compromise of the TKCA Judgment as reflected in the TKCA Claim Settlement.  Pursuant to the TKCA Claim Settlement, $8,500,0000 of TKCA's Allowed Claim shall be subordinated to all other unsecured claims (but not equity holders as defined in 11 U.S.C. 101(17) and/or insider(s) as defined in 11 U.S.C. 101(31)), including TKCA's Allowed Claim. Furthermore, TKCA waived participation in sale proceeds due to TKCA from the bankruptcy estate resulting from the Sale Order for its pro-rata share of estate assets on account of TKCA's Allowed Claim until such distributions to TKCA would equal $1,400,000 (the "Threshold"). If and when the

Threshold is met, TKCA shall be entitled to participate pro-rata in all further distributions with Class 2 Claimants on account of TKCA's Allowed Class 2 Claim. TKCA shall be entitled to vote its allowed claim in both Classes 2 and 3.

**Class 4 - Unsecured Claims of Insiders.** Class 4 shall consist of the Allowed Claims of Insiders of the Debtor that are non-priority, and which claims have not been otherwise re-characterized as equity claims or subordinated by Court order.

**Class 6** – **Existing Equity Interests in PHP.** Class 6A shall consist of any existing equity interests in PHP, PHS and any Claims based upon ownership rights, distributions, or other assertions of liability on account of such equity interests

**Class 7 – Subordinated Claims or Interests.** Class 7 shall consist of any Allowed Claims that are the subject of a Bankruptcy Court Order subordinating such Allowed Claims to other Allowed Claims and Interests.

## IV.    <u>TREATMENT OF ALLOWED CLAIMS BY CLASS.</u>

A.    **<u>Overview of Classes and Voting.</u>** The following provisions provide the proposed treatment of Allowed Claims in each Class of Creditors and Interests. This Plan is intended to treat all Claims against the Estate of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Bankruptcy Code §502(h). However, only those Claims that are Allowed Claims under this Plan are eligible to receive distributions as specified in the appropriate Class under this Plan.

**Unimpaired Classes**). The following Classes are Unimpaired and therefore do not vote to accept or reject the Plan, as they are deemed to *accept* the Plan:

**Class A - Administrative Claims.**

**Impaired Classes**

**Class 2 - Allowed Unsecured Claims.**

**Class 3 - TKCA Subordinated Claim.**

Classes 2 and 3 are impaired under the Plan and are entitled to vote on the Plan.

**Non-Voting Classes.** The following Classes shall be paid no distributions under the Plan and therefore do not vote to accept or reject the Plan, as they are deemed to *reject* the Plan:

**Class 5- Unsecured claims of Insiders**

**Class 6 - PHP and PHS Equity Interests**

**Class 7 - Subordinated Claims or Interests**

**Voting Classes. The following Classes are impaired and therefore may vote to accept or reject the Plan:**

**Class 2 – General Allowed Unsecured Claims**

**Class 3 - TKCA Allowed Subordinated Unsecured Claim**

B. <u>Treatment of Allowed Claims and Interests by Class.</u>

**Class A - Administrative Expense Claims.** Allowed Administrative Expense Claims shall be paid in full on the later of: (1) the Effective Date; (2) the date on which such Claim becomes an Allowed Claim; or (3) the date that payment of such Allowed Claim is due under ordinary business terms. Payment shall be first made from the application of any retainer held by the holder of an Allowed Administrative Expense Claim, and thereafter from the Reorganized Debtor from the TKCA Plan Payment Fund, and/or from operating funds of the Reorganized Debtor. **The holders of Administrative Expense Claims are unimpaired and deemed to have accepted the Plan.**

**Class 1C - 1X Other Secured Claims. [reserved]**

**Class 1 - Priority Unsecured Claims.** The holders of Allowed Class 1 Claims shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in full in cash of their Allowed Claims in the ordinary course from the Bankruptcy Sale proceeds, or if already fully due, from the Liquidation Trust on the Effective Date. **The Class 1 Claims are unimpaired and holders are not entitled to vote to accept or reject the Plan.**

**Class 2 - General Unsecured Claims.** The holders of Allowed Class 2 General Unsecured Claims (excluding Insider Claims and the TKCA Subordinated Claim) shall receive on account of their Allowed Claim a pro-rata distribution of the Liquidation Trustee proceeds on account of their

Allowed Claim on the later of: (1) one year following the Effective Date, or (2) within 10 Business Days after such Claim becomes an Allowed Claim. This date may be modified or extended by court order after appropriate notice and opportunity for hearing.

Thereafter, this Class shall receive pro-rata payments along with Class Allowed Claimants from the proceeds of the Liquidation Trust. Full payment hereunder shall constitute full satisfaction, settlement, release, extinguishment and discharge of such Allowed Claims. Any Allowed Class 2 Claim not paid in full on the Effective Date shall accrue interest from the Effective Date through the date actually paid at the Plan Interest Rate, which interest shall be paid in addition to the amount of the Allowed Claim. This provision shall only apply should there be sufficient assets in the Liquidation Trust to pay all Allowed Claims in full.

**The Class 2 Claims are impaired and holders thereof are entitled to vote to accept or reject the Plan.**

**Class 3 - TKCA Subordinated Allowed Unsecured Claim.** TKCA has an allowed general unsecured claim of $20,000,000.00 ("TKCA's Allowed Claim"), which is a compromise of the TKCA Judgment as reflected in the TKCA Claim Settlement. Pursuant to the TKCA Claim Settlement, $8,500,0000 of TKCA's Allowed Claim shall be subordinated to all other unsecured claims (but not equity holders as defined in 11 U.S.C. 101(17) and/or insider(s) as defined in 11 U.S.C. 101(31)), including TKCA's Allowed Claim. Furthermore, TKCA waived participation in sale proceeds due to TKCA from the bankruptcy estate resulting from the Sale Order for its pro-rata share of estate assets on account of TKCA's Allowed Claim until such distributions to TKCA would equal $1,400,000 (the "Threshold"). If and until such time as the Threshold is met, TKCA shall take no distributions on account of TKCA's Allowed Claim. If and when the Threshold is met, TKCA shall be entitled to participate pro-rata in all further distributions to Class 2 Claimants on account of TKCA's Allowed Class 2 Claim. The balance of the TKCA unsecured claim in the amount of $11,500,000 shall share pro-rata in the distributions to Class 2 creditors. TKCA shall be entitled to vote its allowed claim in both Classes 2 and 3.

The Class 3 Claim of TKCA is impaired and TKCA is entitled to vote to accept or reject the Plan.

**Class 4 – Unsecured Claims of Insiders.**

**(a)** **Claim Objection.** To the extent a prior order of the Bankruptcy Court has not been entered disallowing or otherwise determining the validity, nature and amount of any Class 4 Claim, this Plan shall constitute an Objection to the Allowance of any asserted Class 4 Claims filed or scheduled in favor of any Insider of the Debtor, based on grounds of:

**1.** Re-characterization of such claims as equity;

**2.** Failure of Consideration;

**3.** Counterclaims of the Estate in excess of said claims;

**4.** Equitable Subordination based on gross inequitable conduct or other applicable grounds; or

**5.** Any other grounds that may be asserted in writing before the Claims Objection Date, all such being grounds reserved by the Reorganized Debtor.

**(b)** **Treatment.** Holders of an Allowed Class 4 Claim shall receive payment from the Liquidation Trust equal to the amount of their Allowed Claims only after payment if full of all claims of higher priority. **Class 4 Claims are impaired and holders thereof are insiders that are not entitled to vote to accept or reject the Plan.** Class 4 is not expected to receive any distributions under the Plan.

**Class 6 – Equity Interests.** All equity interests in the Debtor and PHS that existed on the Filing Date or thereafter, or created thereafter, shall be deemed cancelled and terminated as of the Effective Date. Holders of any such interests shall receive no distributions or other consideration under this Plan. **The holders of Class 6 Equity Interests are deemed to reject the Plan.**

**Class 7. Subordinated Claims or Interests.** Allowed Claims or Interests in Class 7 shall be treated in accordance with the terms of the Order subordinating such claims or interests. **The Class 7 claims or Interests are deemed to reject the Plan.**

**V.** **REQUEST FOR CONFIRMATION AS TO NON-ACCEPTING CLASSES**

Trustee hereby requests confirmation of this Plan pursuant to Bankruptcy Code §1129(b) with respect to any Class of Claims that is impaired and does not vote to accept this Plan, and with respect to any Class of Claims or Interests that is deemed to have rejected this Plan.

## VI.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### A.  Treatment of Executory Contracts and Unexpired Leases.

All executory contracts and unexpired leases that have not been determined by an order of the Bankruptcy Court to be assumed or rejected prior to the Confirmation Date, shall remain subject to the provisions of Bankruptcy Code Section 365 regarding assumption or rejection thereof, through and including the Effective Date.

### B.  Notice of Intent to Assume or Reject and Requirement to Object.

If not already subject to a pre-existing order affecting their treatment, at least 10 days prior to the Confirmation Hearing, the Plan Proponent shall file and serve on the other contracting parties, a list of its Proposed Resolution of Executory Contracts and Leases ("Notice of Proposal"), which shall include the Plan Proponent's intent with regard to assumption, assignment or rejection of each listed contract or lease, including any cure amounts or other particular conditions or proposals as to each contract or lease.  The other contracting parties shall have until the earlier of: (1) the date that is five Business Days prior to the Confirmation Hearing, or (b) 14 days after service of the Notice of Proposal, to file an objection to the proposed assumption, rejection, or cure amount regarding their respective contract or lease.  Any objections not resolved prior to the Confirmation Hearing shall be resolved at a hearing, which may be the Confirmation Hearing.  If the other contracting party does not timely file and serve a written objection to the proposed assumption, rejection, or cure amount, such objection(s) shall be forever barred.

### C.  Timely Filing Claims for Rejection Damages and Treatment Thereof.

Any party to a rejected executory contract or lease that asserts a Claim against the Estate on account of the rejection thereof and seeks a distribution on account thereof, shall file a proof of claim setting forth its rejection damages claim(s) no later than thirty (30) days after the earlier of:  (1) the

14

Effective Date, or (2) entry of an order by the Bankruptcy Court rejecting such executory contract or unexpired lease. Allowed Claims for rejection damages will generally be classified as Class 2 General Unsecured Claims. Failure to timely file a proof of claim for rejection damages under this provision will bar assertion of such claim against the Liquidation Trust..

**VII.   IMPLEMENTATION OF THE PLAN.**

 **A.   Rights of the Liquidation Trust prior to and after Effective Date.**

  *Upon entry of the Confirmation Order*, the Chapter 11 Trustee shall become the Liquidation Trustee and shall work to ensure that all matters necessary to implement the Plan are in place, and that an orderly transition will take place. The Chapter 11 Trustee shall retain all rights, powers and duties with regard to the Debtor and the Estate until the Effective Date. The Chapter 11 Trustee shall provide reasonable cooperation and access to funds, accounts, tangible property and records of the Debtor and the Estate to management of the Liquidation Trust in order to ensure the orderly transition and ability of the Liquidation Trust to pursue all Post-Confirmation Claims preserved for the benefit of the bankruptcy estate.

  *Upon the Effective Date*, all property of the Estate and the Debtor, including any remaining Bankruptcy Sale proceeds shall vest in the Liquidation Trust, free and clear of all obligations, liabilities, successor liability, or other obligations, except as expressly set forth in this Plan. The Liquidation Trust shall succeed to all property, rights, powers, causes of action, and other rights of the Debtor and the Trustee, subject only to the terms of the Sale order and APA. The Liquidation Trust shall be free, without Court approval, to implement the terms of the Plan, to pursue or compromise such causes of action, and to conduct business and manage the Liquidation Trust, whether ordinary course or outside the ordinary course, including but not limited to taking action to buy, sell, lease and otherwise use its assets, borrow money and grant liens in property, pay its ordinary course obligations, hire and pay professionals including accountants and legal professionals, and generally conduct business to the extent allowed by law and not in manner in violation of the provisions of and its obligations under this Plan or the Liquidation Trust. All existing pre-petition and post-petition claims of all creditors shall be fully released in exchange for the distributions from the Liquidation

15

Trust. Upon plan confirmation, the Official Unsecured Creditors' Committee will be disbanded. Nothing contained in the Plan prohibits any member of the Liquidation Committee from bringing an issue or dispute concerning this Plan to the attention of the Court, including any dispute regarding the decisions of the Liquidation Trustee and/or the Liquidation Committee.

**B.    Funding of the Plan Payment Fund, Plan Payments /.**

After the entry of the Confirmation Order and on or before the Effective Date, the Plan Proponent shall fund the Liquidation Trust by depositing the all Bankruptcy Sale and other Estate cash and cash equivalents a new bank account established for the benefit of the Liquidation Trust Beneficiaries.

Upon the Effective Date, the Liquidation Committee shall be formed. Upon the Effective Date, the Liquidation Trustee shall make all payments required hereunder, using his own discretion as to the use of the Bankruptcy Sale proceeds or Post-Confirmation Recoveries. The Liquidation Trust shall make no distributions other than as authorized under the Liquidation Trust or for any purpose other than payments to holders of Allowed Claims in Classes A, 2 and 3 hereunder.

**C.    Issuance of Instruments / Documents.**    Upon the Effective Date, the Liquidation Trustee shall have all authority and power to issue any documents, instruments, or do such other acts as necessary to implement this Plan or other matters affecting same.

**VIII.    <u>CONDITIONS PRECEDENT TO CONFIRMATION/ RESERVATION OF RIGHTS.</u>**

**Trustee reserves the right to withdraw this Plan at any time prior to the entry of the Confirmation Order.**

**A.    Entry of the Confirmation Order.**    The Bankruptcy Court shall have entered the Confirmation Order approving this Plan as proposed or with such modifications as which Trustee has indicated in writing are acceptable to Trustee as Plan Proponent and creditor hereunder;

**C.    Establishment of Liquidation Trust.**    On or before the conclusion of the Confirmation Hearing, the documentation necessary to establish the Liquidation Trust, the

Case 2:15-bk-12003-DPC    Doc 482    Filed 05/31/16    Entered 05/31/16 15:50:50    Desc
Main Document    Page 27 of 60

Liquidation Committee has been consummated and the Trustee has obtained satisfactory legal and accounting advice in regard to same.

**D.     Appointment as Liquidation Trustee.**   On or before the conclusion of the Confirmation Hearing, Trustee has received confirmation (to his satisfaction) that he, or someone approved by Trustee, shall be appointed Trustee of the Liquidation Trust.

## IX.     DETERMINATION OF CLAIMS.

**A.     Allowance of Claims.**   No payments or distributions will be made to Creditors unless and until their Claims are Allowed Claims. The Trustee (prior to the Effective Date), the Liquidation Trustee, or any party-in-interest may object to the allowance of any Claim by filing a written objection with the Bankruptcy Court before expiration of the Claims Objection Date.  Any Claim that is the subject of an objection Claim shall be treated as a Disputed Claim until the objection has been settled or fully adjudicated, although the Bankruptcy Court may estimate or temporarily allow the Disputed Claim (*e.g.,* for voting purposes). The Liquidation Trust may, in its discretion, make distributions to holders of Allowed Claims under the Plan prior to the Court's entry of a Final Order resolving all Claim objections with respect to that Class of Creditors if such payment will not jeopardize the Liquidation Trust's ability to fund an equivalent pro-rata distribution to all other Claims as ultimately allowed.

**B.     Contingent Claims.**   Until a Contingent Claim becomes an Allowed Claim or is disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan.  The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim.

**C.     Objections to Claims.**   Objections to Claims shall be filed by the Claims Objection Date as defined herein.  The Liquidation Trust may settle any objection to claim without a hearing provided that notice of the settlement is provided to creditors entitled to receive such notice, and no objections to the settlement are filed within the time provided by the applicable rules. Any post-confirmation  claim settlement in excess of $50,000 shall require Bankruptcy Court approval.

**D.     Claims not Allowed are Barred.** The Confirmation Order, except as otherwise provided herein, shall constitute a final order: (i) disallowing all Claims and interests to the extent such Claims and interests are not allowable under any provision of §502 of the Bankruptcy Code, including, without limitation, time-barred Claims and Interests and Claims for un-matured interest.

## X.     DISCHARGE OF THE CHAPTER 11 TRUSTEE AND CREDITORS' COMMITTEE.

Upon the Effective Date, the Chapter 11 Trustee shall be relieved and discharged from his duties as the court-appointed trustee, and the bond posted by the Chapter 11 Trustee shall be exonerated. The Chapter 11 Trustee shall not be liable to the holder of any Claim or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period of his appointment, other than for willful misconduct or gross negligence.

Upon plan confirmation, the Official Unsecured Creditors' Committee will be disbanded and its representatives discharged. The Committee and its representatives shall not be liable to the holder of any Claim or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period of appointment, other than for willful misconduct or gross negligence.

All post-petition causes of action, including the Dickstein Shapiro malpractice/disgorgement action, as well as any avoidance or recovery actions under Chapter 5 shall be pursued and prosecuted on behalf of the Debtor's estate by the Liquidation Trust, through its Trustee. This is subject only to any limitations imposed by the Sale Order and APA.

## XI.     MISCELLANEOUS.

**A.     Minimum Distributions.** Notwithstanding anything to the contrary in the Plan, no distributions shall be required to be made hereunder in an amount of less than $100.00.

**B.     Unclaimed Funds.** In the event any distribution made hereunder is the subject of a check that has not been negotiated, a delivery that has been returned, or is otherwise unclaimed, then the Reorganized Debtor shall make a reasonable effort to locate and inform the affected claimant of the putative payment. If not resolved within 90 days from receipt of the returned item, the Reorganized Debtor may retain such funds free and clear of such Claimant's Allowed Claim.

18

**C.    Effect of Revocation of the Plan.**    The Plan Proponent has reserved the right hereunder to revoke and withdraw the Plan before entry of the Confirmation Order.  If the Plan Proponent revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims.

**D.    Administrative Expense Claims Bar Date.**    On April 29, 2016 (Dkt. #430), the Court entered an order setting May 31, 2016 as the Administrative Expense Claims Bar Date.  Creditors holding Administrative Expense Claims against the Estate must submit appropriate application for allowance thereof on or before the Administrative Expense Claims Bar Date. Creditor and other parties-in-interest will have twenty-one (21) days after the Administrative Expense Claims Bar Date to review and object to such applications/Administrative Claims.

**E.    Exemption from Transfer Taxes.**    In accordance with Bankruptcy Code § 1146(a); (a) the issuance, distribution, transfer, and exchange of assets or property of an Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**F.    United States Trustee's Fees.**    So long as the case is open, the Liquidation Trust will pay the required statutory fees to the Office of the United States Trustee.

**G.    Closing of the Case.**    At such time as the Plan has been substantially consummated, that is, when all things requiring action by the Court have been done and the Plan has been substantially consummated, this case shall be closed.  To close the case, the Liquidating Trustee shall

file an Application for Final Decree showing that the case has been substantially consummated. Substantial consummation of this Plan shall be deemed to have occurred hereunder upon payment by the Liquidation Trust of the distributions to creditors due hereunder on the Effective Date.

**H.    Governing Law.**  Except to the extent that federal law (including the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, construed and enforced in accordance with the laws of the State of Arizona, without giving effect to the principles of conflicts of law thereof.

**I.    Modification of Plan.**  The Plan Proponent may propose amendments to, or modifications of the Plan under Bankruptcy Code § 1127 at any time prior to the Confirmation Date. After the Confirmation Date, the Plan Proponent may remedy any defects or omissions or reconcile any inconsistencies in the Plan, in the Plan documents, or the Confirmation Order or any other order entered for the purpose of implementing the Plan, in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of Claimants are not materially and adversely affected.

**J.    Discharge.**  Since this is a Liquidating Plan, no discharge of the Debtor shall be obtained pursuant to the provisions of 11 U.S.C. § 1141(d)(3)(A).

**K.    Injunction.**  Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified by this Plan, or that is subject to a distribution under this Plan, or an Equity Interest, are permanently enjoined from taking any of the following actions on account of such Claims, debts, liabilities, or Equity Interests; (a) commencing or continuing in any manner any action or other proceeding against any property to be distributed under this Plan: (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any property to be distributed under this Plan; (c) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under this Plan; and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provision of this Plan or the Bankruptcy Code.  Nothing in this section or elsewhere in this Plan is to be construed or is to have

the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of an Allowed Claim to assert a right of setoff or recoupment arising in connection with that Allowed Claim as a part of this Plan.

**L.** **Successors and Assigns.** This Plan shall be binding upon and inure to the benefit of the respective successors and assigns and personal representatives of the holders of Allowed Claims hereunder, as well as the Liquidation Trust.

**XII.** **RETENTION OF JURISDICTION.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Case and Liquidation Trust after the Effective Date as legally permissible, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

2. Grant or deny any application for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

3. Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor or Liquidation Trust is a party and to hear, determine and, if necessary, liquidate any Claims arising from, or cure related to assumption or rejection;

4. Ensure that distributions required under this Plan are accomplished in accordance with this Plan;

5. Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtor or Liquidation Trust that may be pending on the Effective Date;

6. Enter any necessary or appropriate orders to implement or consummate this Plan's provisions and all contracts, instruments, releases and other agreements or documents created in connection with this Plan and the Liquidation Trust;

21

7. Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any person's obligations incurred in connection with this Plan or the Liquidation Trust;

8. Hear and determine any motion or application to modify this Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Liquidation Trust or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with this Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

9. Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of this Plan or the Liquidation Trust;

10. Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11. Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trustor any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan, the Disclosure Statement, Liquidation Trust or the Confirmation Order;

12. Adjudicate the Disputed Claims and any cause of action or claims of the Debtor or Liquidation Trust; and

13. Issue a final decree and enter an order closing the Case.

Wherefore, and based upon the foregoing, the Trustee requests confirmation of this Plan.

**DATED** this 2nd day of May, 2016

**CROSS LAW FIRM, P.L.C.**

By    *JEC #009063*
       James E. Cross, Esq.
       1850 N. Central Ave., Ste. 1150
       Phoenix, Arizona  85004
       Attorneys for Chapter 11 Trustee


Plan Proponent:  Louie Mukai, Chapter 11 Trustee


By */s/ Louie Mukai*

# EXHIBIT B

# LIQUIDATION TRUST AGREEMENT AND

# DECLARATION OF TRUST

This Liquidation Trust Agreement and Declaration of Trust (the "Agreement") is entered into as of the Effective Date, by and among the Debtor Phoenix Heliparts, Inc. (now substantively consolidated with Phoenix Heli Support, L.L.C.) by its Chapter 11 Trustee, Louie Mukai, and Louie Mukai, as trustee of this Liquidation Trust (the "Liquidation Trustee"), for the benefit of the Beneficiaries.

## RECITALS

A. The *Chapter 11 Trustee's First Amended Liquidation Plan* Filed May 2, 2016 (the "Plan") filed in the Phoenix Heliparts, Inc Chapter 11 Case No. 2:15-bk-12003-DPC (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") has been confirmed by the Bankruptcy Court. Under the Plan, certain assets are transferred to a Liquidation Trust for the benefit of certain administrative claimants and classes of creditors as provided in the Plan..

B. On _____ 2016, the Bankruptcy Court entered its Order confirming the Plan (the "Confirmation Order"). This Agreement is Exhibit "B" to the Confirmation Order and the Plan is attached to the Confirmation Order as Exhibit "A." The Plan and the Confirmation Order are incorporated into this Agreement by this reference.

C. Pursuant to Section VII. thereof, the Plan provides for the creation of the Liquidation Trust and the irrevocable transfer and assignment to the Liquidation Trust of all of the remaining assets of the Debtor as described in the Plan ("Trust Assets").

D. The primary purpose of the Liquidation Trust is to: (i) oversee and direct the liquidation of the Trust Assets for the benefit of the Beneficiaries thereunder; and (ii) distribute any proceeds of the Trust Assets received by the Liquidation Trust to the Beneficiaries pursuant to the terms of the Plan.

E. The Liquidation Trustee shall also act as Estate Representative, and, in such capacity, shall be responsible for the administration of the Disputed Claims.

QB\39900383.2
{00005893.0001/00674693.DOCX/ }11

F.  The Liquidation Trust will be operated with no objective to continue and engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets, and consistent with the Liquidation purpose of the Liquidation Trust.

G.  The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Liquidation Trustee shall operate and maintain the Liquidation Trust in compliance with the guidelines for Liquidation Trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding Liquidation Trusts issued by the Internal Revenue Service.

## 1.  ORGANIZATION: ESTABLISHMENT OF THE LIQUIDATION TRUST

1.1. Name. The Liquidation Trust shall be known as the "Phoenix Heliparts Liquidation Trust," in which name the Liquidation Trustee may conduct the affairs of the Liquidation Trust.

1.2. Incorporation of Plan.     The Plan and Confirmation Order are incorporated into this Agreement. In the event of any conflict between the Plan and this Agreement, the Plan will control and govern. In the event of any conflict between the Confirmation Order and the Plan or this Agreement, the Confirmation Order will control and govern.

1.3. Declaration and Establishment of Liquidation Trust.   For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the Plan, as of the Effective Date, the Debtor are deemed to have executed this Agreement and, pursuant to the Plan and this Agreement, hereby establish the Liquidation Trust and irrevocably transfer, absolutely assign, convey, set over, and deliver to the Liquidation Trustee, and its successors and assigns, all of their right, title and interest in and to the Trust Assets in trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan. The Liquidation Trustee shall have all the rights, powers and duties set forth in the Plan and this Agreement and available under applicable law for accomplishing the purposes of the Liquidation Trust. The Liquidation Trustee is hereby authorized to file with the Secretary of State of the State of Arizona and any other governmental authorities any documents necessary or

helpful to establish the Liquidation Trust

1.4. Title to Liquidation Trust Assets,

a) The transfer of the Trust Assets to the Liquidation Trust shall be made by the Debtor for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Trust Assets, the Liquidation Trustee shall succeed to all of the Debtor' right, title and interest in the Trust Assets and the Debtor will have no further interest in or with respect to the Trust Assets or this Liquidation Trust. Except as otherwise provided in the Plan, this Agreement or the Confirmation Order, upon the Effective Date of the Plan, title to the Trust Assets shall pass to the Liquidation Trust free and clear of all Liens, claims and interests of any person in accordance with Sections 363(f), 1123, 1141 and 1146(c) of the Bankruptcy Code.

b) For United States federal and applicable state income tax purposes, the transfer of the Trust Assets to the Liquidation Trust pursuant to and in accordance with the Plan shall be reported as a disposition of the Trust Assets directly to and for the benefit of the Beneficiaries immediately followed by a contribution of the Trust Assets by the Beneficiaries to the Liquidation Trust for the benefit of the Beneficiaries. The Beneficiaries will be treated as the grantors and deemed owners of the Liquidation Trust.

c) To the full extent permitted by law, all rights under (i) Section 363(h) of the Bankruptcy Code and (ii) Section 365 of the Bankruptcy Code (including without limitation Section 365(f) thereof) are preserved for the benefit of the jointly administered Estate and its Creditors, and may be exercised by the Liquidation Trustee with the approval of the Bankruptcy Court.

1.5. Assignment and Assumption of Certain Liabilities. In accordance with Section 1 hereof, the Debtor hereby irrevocably transfer, assign and convey the Trust Assets to the Liquidation Trust, and the Liquidation Trustee on behalf of the Liquidation Trust hereby assumes and agrees that all such Trust Assets are being transferred to the Liquidation Trust subject to the following liabilities, if any, that arise out of or relate to any known or unknown claim (as such term is defined in Section 101(5) of the Bankruptcy Code) or causes of action against the Debtor or their respective Estates:

{00053893.0001/00674693.DOCx?2/3

a) all fees payable pursuant to Section 1930 of title 28 of the United States Code until such time as the Bankruptcy Court enters a final decree closing each Debtor's Chapter 11 Case;

b) any expenses incurred and unpaid, or to be incurred, by the Liquidation Trustee in the performance of its administrative duties in respect of the winding up of the Debtor' Estates, including the filing of final tax returns. For the avoidance of all doubt, in no event shall the Liquidation Trustee pay any tax liability for any member, shareholder or owner of a business entity (as defined in Reg. 301.7701-2(a)) that is disregarded as an entity separate from its owner for Federal tax purposes.

c) any obligations owing by the Trust pursuant to the Plan and unpaid (including, without limitation, obligations incurred after the Confirmation Date and the fees and expenses of professionals thereunder); but specifically excluding any Claims which have been barred or discharged pursuant to the Plan.

1.6. Appointment of Liquidation Trustee. Louie Mukai is hereby appointed the Liquidation Trustee, effective as of the date of this Agreement, provided that if Louie Mukai shall be unable to accept the position of Liquidation Trustee or thereafter if a successor trustee is required, then a replacement Liquidation Trustee shall be appointed upon (a) motion to the Bankruptcy Court by any party in interest and (b) the confirmation of such appointment by the Bankruptcy Court.

2. BENEFICIARIES

2.1. Allocation of Interests; Register.

a) Allocation of Interests. Each Beneficiary hereunder shall receive uncertificated interests in the Liquidation Trust, which interests shall be allocated pro rata in accordance with the distribution(s) under the Plan to each Beneficiary.

b) Register. The Liquidation Trustee shall cause to be kept a register (the "Register") in which the Liquidation Trustee shall at all times maintain the names, physical and e-mail addresses, and interests of the Beneficiaries.

2.2. Rights of Beneficiaries. Each Beneficiary will be entitled to participate in the rights due to a Beneficiary hereunder. Each Beneficiary shall take and hold its uncertificated

QB\39900383.2

{00053891.0001/00674693.DOCX / 24}

beneficial interest subject to all of the terms and provisions of this Agreement and the Plan. The interest of a Beneficiary of the Liquidation Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency or incapacity shall not terminate or affect the validity of this Agreement. A Beneficiary shall have no title to, right to, possession of, management of, or control of, the Trust Assets except as expressly provided in this Agreement or the Plan. Title to all the Trust Assets shall be vested in the Liquidation Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Agreement.

2.3. Limit on Transfer of Interests of Beneficiaries.

a) The interest of a Beneficiary in the Liquidation Trust shall be transferable, upon reasonable notice to, and subject to any reasonable limitations that may be placed thereon by the Liquidation Trustee, provided , however, that:

    i. Beneficiaries may transfer their uncertificated interests in the Liquidation Trust only in their entirety, and may not transfer fractional portions thereof; and

    ii. the Liquidation Trustee need     not reflect any transfer (or make any distribution to any transferee) and will give notice to such Beneficiary that no transfer has been recognized in the event the Liquidation Trustee reasonably believes that such transfers (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the Liquidation Trust to be required to register beneficial interests under the Securities Exchange Act of 1934, as amended.

b) Prior to any transfer, assignment, hypothecation, pledge, exchange or conveyance of a beneficial interest in the Liquidation Trust (each, a "Transfer"), the transferring Beneficiary shall submit to the Liquidation Trustee a duly endorsed assignment of the beneficial interest to be transferred (in a form reasonably acceptable to the Liquidation Trustee) together with the service charge, if any, to be specified by the Liquidation Trustee pursuant to this subsection (b). No such

00005893.0001/00674693.DOCX 7.2/5

Transfer shall be effected until, and the transferee shall succeed to the rights of a Beneficiary only upon, final acceptance and registration of the Transfer by the Liquidation Trustee in the Register. Prior to the registration of any Transfer by a Beneficiary, the Liquidation Trustee shall treat the entity in whose name the beneficial interest is registered as the owner for all purposes, and the Liquidation Trustee shall not be affected by notice to the contrary. When a request to register the Transfer of a beneficial interest is presented to the Liquidation Trustee, the Liquidation Trustee shall register the Transfer as requested if the requirements for Transfers hereunder are met. The Liquidation Trustee shall charge a service charge in an amount sufficient to cover the expenses of the Liquidation Trustee and its agents and any tax or governmental charge that may be imposed on any Transfer of a beneficial interest. Failure of any Beneficiary to comply with these provisions shall void any transfer of the related beneficial interest, and the proposed transferee shall have no rights under this Agreement. Upon the Transfer of a transferring Beneficiary's entire beneficial interest in the Liquidation Trust as evidenced by the Register, such transferring Beneficiary shall have no further right, title or interest in the Trust Assets or the Liquidation Trust.

2.4. No Legal Title in Beneficiaries. No Beneficiary shall have legal title to any part of the Trust Assets. No transfer, by operation of law or otherwise, of the right, title and interest of any Beneficiary in and to the Trust Assets or the Liquidation Trust shall operate to terminate this Liquidation Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Assets.

3. PURPOSE. AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES.

3.1. Purpose of the Liquidation Trust. The Liquidation Trust is a Liquidation Trust pursuant to which the Liquidation Trustee is to hold, liquidate and dispose of the Trust Assets in accordance with this Agreement, the Plan and Treasury Regulation Section 301.7701-4(d). Accordingly, the primary purpose of the Liquidation Trust is to liquidate and distribute the Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation

QB\39900383.2

{00053891.0001/00674693.DOCX 7 2}6

value of the Trust Assets, and consistent with the Liquidation purpose of the Liquidation Trust.

3.2. Authority.    In connection with the administration of the Liquidation Trust, except as set forth in this Agreement, the Liquidation Trustee is authorized to and shall perform, in good faith, any and all acts necessary or desirable to accomplish the purposes of the Liquidation Trust, and to take such actions, in good faith, as are required in its capacity as Estate Representative. Subject to any limitations contained in, or as otherwise provided by this Agreement or in the Plan (e.g., provisions regarding "Major Decisions"), the Liquidation Trustee shall have the authority, power and obligation, in its capacity as Liquidation Trustee or as Estate Representative, as applicable, to:

hold legal title to any and all rights of the Beneficiaries in or arising from the Trust Assets, including, but not limited to, collecting any and all money and other property belonging to the Liquidation Trust and the right to vote a claim or interest in a case under the Bankruptcy Code and receive any distribution therein; perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, objecting to Claims and Disputed Claims, commencing, prosecuting, or settling Causes of Action, and Claims' objection proceedings, enforcing contracts, and asserting claims, defenses, offsets, and privileges;

a)   protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

b)   establish and maintain any necessary reserves pursuant to the terms of the Plan and such other reserves as the Liquidation Trustee deems necessary in its reasonable judgment;

c)   file or cause to be filed, if necessary, any and all tax and information returns, and any other statements or disclosures relating to the Liquidation Trust that are required to be filed by any governmental unit with respect to the Liquidation Trust, and withhold and pay taxes properly payable by the Liquidation Trust, if any;

QB\39900383.2
{00053693.0001/00674693.DOCX / 2 }

d)     determine and satisfy any and all liabilities created, incurred or assumed by the Liquidation Trust;

e)     execute offsets against Claims as provided for in the Plan;

f)     pay all expenses and make all other payments relating to the Trust Assets, including without limitation the reasonable fees and expenses of the Liquidation Trustee hereunder subject to the limitations of Section 4.5 hereof;

g)     pay all fees payable pursuant to Section 1930 of title 28 of the United States Code until such time as the Bankruptcy Court enters a final decree closing each Debtor's Chapter 11 Case;

h)     take or refrain from taking any action the Liquidation Trustee reasonably deems necessary to protect, preserve and maximize the Trust Assets;

i)     enter into contracts in the course of operating the Trust Assets or in conjunction with their disposition under the Plan;

j)     manage, sell and convert all or any portion of the Trust Assets to Cash;

k)     make distributions as specified in the Plan and in Section 3.3 below;

l)     invest Cash in demand and time deposits, such as short-term certificates of deposit, in banks and other savings institutions, or other temporary, liquid investments, such as treasury bills, as further provided in Section 345 of the Bankruptcy Code, provided, however, that any such investment shall be consistent with the Liquidation Trust's status as a Liquidation Trust within the meaning of Treasury Regulations Section 301.7701-4(d) and in accordance with Rev. Proc. 94- 45, 1994-2 C.B. 684;

m)     release, convey or assign any right, title or interest in or about the Trust Assets or any portion thereof;

n)     open and maintain bank accounts and deposit funds and draw checks;

o)     engage, have or pay such attorneys, accountants, engineers, agents, tax specialists, financial advisors, appraisers, other professionals, and clerical and staff assistance as may, in the discretion of the Liquidation Trustee, be deemed necessary to fulfill its duties under the Plan;

p)     in compliance with Section 4.4 hereof, sue and be sued in the name of the

Liquidation Trustee and file or pursue objections to Claims and Causes of Action, and seek to settle or disallow any of them, and compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with any Cause of Action in favor of or against the Liquidation Trust as the Liquidation Trustee shall deem advisable;

q) enforce, waive or release rights, privileges or immunities of any kind;

r) in general, without in any manner limiting any of the foregoing, deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any entity owning the same to deal therewith, whether similar to or different from the ways herein specified;

s) request any appropriate tax determination with respect to the Liquidation Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

t) seek the examination of any entity under, and subject to, the provisions of Bankruptcy Rule 2004;

u) pay obligations or expenses of, or relating to, the Trust Assets when the Liquidation Trustee, considering the purposes, terms, distributional requirements and other circumstances of the Plan, deems it prudent to do so to effectuate the Plan;

v) prepare and disseminate any related document that is required of an Debtor under applicable non-bankruptcy law in accordance with the Plan;

w) except as may be limited by Section 3.8 hereof, refinance or modify any existing encumbrance on all or any portion of the Trust Assets which the Liquidation Trustee reasonably deems to be desirable to protect, preserve or maximize the Trust Assets;

x) abandon any property which it determines in its reasonable discretion, after taking into account the potential expense, delay and uncertainty of any litigation, to be of de minimis value or otherwise burdensome to the Liquidation Trust, including, without limitation, any pending adversary proceeding, Causes of Action or other legal action;

QB\39900383.2
{00053893.0001/00674693.DOCX 7 2}9

y)   except as otherwise set forth in this Agreement or in the Plan, and subject to the Treasury Regulations governing Liquidation Trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Liquidation Trustee shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan; and

z)   take such other actions as may be necessary or helpful to accomplish the purposes of the Plan, including, without in any manner limiting any of the foregoing, dealing with the Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any entity owning the same to deal therewith, whether similar to or different from the ways herein specified. No entity dealing with the Liquidation Trust shall be obligated to inquire into the authority of the Liquidation Trustee in connection with the protection, conservation or disposition of the Trust Assets.

3.3. Duties of the Liquidation Trustee and Estate Representative. Without limiting the power and obligations set forth in Section 3.2 hereof, subject to any limitation contained in, or as otherwise provided by this Agreement or in the Plan, the Liquidation Trustee, in its capacity as Liquidation Trustee or as Estate Representative, shall have the additional duties, and all requisite power and authority set forth below in this Section 3.3:

a)   Distributions to Beneficiaries. the Liquidation Trustee shall make all payments required hereunder, using his own discretion as to the use of the Bankruptcy Sale proceeds or Post-Confirmation Recoveries. The Liquidation Trust shall make no distributions other than as authorized under the Paln or for any purpose other than payments to holders of Allowed Claims in Classes A, 2 and 3 hereunder.

b)   Checks issued by the Liquidation Trustee with respect to Allowed Claims shall be null and void if not negotiated within three (3) months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim with respect to whom such check originally was issued. Any such requests shall be made on or before

QB\39900383.2

{00063369.000/00674653.DOCX / 2}10

four (4) months of the date of issuance of the particular check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

c) Timing of Distributions. Within thirty (30) days following the Effective Date and on each successive anniversary of the Effective Date, or as soon thereafter as practicable, and upon such other occasions as is determined to be advisable by a Major Decision of the Liquidation Trustee and the Liquidation Committee Members, the Liquidation Trustee shall make distributions from the Trust to the Beneficiaries of available Cash, less any reserves, in accordance with the priorities set forth in the Plan.

d) Disbursing Agent. The Liquidation Trustee, or its designee, shall act as the disbursing agent under the Plan and shall establish such account or accounts as may be required to effectuate payments and distributions as provided for in the Plan.

e) Distributions from and to Disputed Claims. The Liquidation Trustee shall retain appropriate reserves, to the extent monies are available to do so, with respect to Disputed Claims until they are either Allowed Claims or disallowed by a Final Order of the Bankruptcy Court, and such other reserves as the Liquidation Trustee deems necessary in its reasonable judgment.

f) Maintenance of Distribution Lists. The Liquidation Trustee shall maintain separate records of the names and addresses of all Holders of Allowed Claims and all Holders of Disputed Claims. The Liquidation Trustee may rely upon this record for the purposes of delivering distributions or notices. In preparing and maintaining this record, the Liquidation Trustee ma y rely on the name and address of each Holder set forth in the Bankruptcy Schedules, any Orders of the Bankruptcy Court or set forth in a proof of claim filed by such Holder in the Chapter 11 Case.

g) Maintenance of Proceeds and Cash. The Cash collected subsequent to the Effective Date and Cash to be reserved by the Liquidation Trustee shall be maintained by the Liquidation Trustee in interest-bearing bank accounts, deposits or as permissible under Section 345 of the Bankruptcy Code.

{00053369.000\00674653\DOCX 7}11

h) Reports to Beneficiaries. The Liquidation Trustee shall provide such reports as are described in Section 7 hereof.

i) Tax Returns.

    i. The Liquidation Trustee shall cause the timely preparation, distribution and/or filing of any necessary tax returns and other documents or filings as required by applicable law (including but not limited to (a) those pursuant to Treasury Regulation 1.671-4(a), including, without limitation, Form 1041 and separate statements attached thereto; and (b) pertaining to the Liquidation Trust by virtue of its existence and operations. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust.

    ii. In accordance with the Plan, all holders of beneficial interests in the Liquidation Trust shall report, for tax purposes, consistent with the foregoing.

    iii. The Liquidation Trustee shall pay out of the Trust Assets, any taxes imposed on the Liquidation Trust or the Trust Assets. For the avoidance of all doubt, in no event shall the Liquidation Trustee pay any tax liability for any member, shareholder or owner of a business entity (as defined in Reg. 301.7701-2(a)) that is disregarded as an entity separate from its owner for Federal tax purposes (a "disregarded entity").

    iv. The Liquidation Trustee shall be authorized to, and shall, exercise all powers regarding the Debtor's tax matters, to the same extent as if the Liquidation Trustee were the debtor in possession. The Liquidation Trustee shall complete and file as soon as possible, to the extent not previously filed, any outstanding and any final federal, state, and local tax returns of any Debtor including Forms 1065 or 1120S, or similar forms as applicable for all disregarded entities, and issue K-l's as applicable. The Liquidation Trustee may request an expedited determination of any unpaid tax liability of the Debtor under Section 505(b) of the Bankruptcy Code for all tax periods of the Debtor ending after the Petition Date through the liquidation of the Debtor as

determined under applicable tax laws, to the extent not previously requested.

3.4. No Implied Obligations. Except as otherwise provided in the Plan and Confirmation Order, no other further covenants or obligations shall be implied into this Agreement. The Liquidation Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any document or instrument evidencing or otherwise constituting a part of the Trust Assets.

3.5. Unknown Property and Liabilities. The Liquidation Trustee shall be responsible for only that property delivered to it, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities.

3.6. Limitation of Trustee's Authority.

a) Notwithstanding anything herein to the contrary, the Liquidation Trustee, acting in either its capacity as Liquidation Trustee or as Estate Representative, other than to the extent necessary to preserve the liquidation value of the Trust Assets, shall not and shall not be authorized to engage in any trade or business, and shall take such actions consistent with the orderly liquidation of the Trust Assets as are required by applicable law, and such actions permitted hereunder.

b) Notwithstanding anything herein to the contrary, the Liquidation Trustee, acting in either its capacity as Liquidation Trustee or as Estate Representative, shall not pursue causes of action outside the scope of, or which are unrelated to, the Trust Assets.

c) The Liquidation Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, or have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Trust Assets.

d) The Liquidation Trustee shall not facilitate the development of an active trading market for the beneficial interests in the Liquidation Trust, nor encourage any other entity to do so (including without limitation taking steps to list such interests on any national securities exchange or on NASDAQ, engaging the services of a

{00003369.000/00674653.DOCX / 2}13

market maker, placing any advertisements in the media promoting investment in the Liquidation Trust, or collecting or publishing information about prices at which such interests may be transferred).

e) The Liquidation Trustee acknowledges that a breach of this Section 3.6 could severely impact the value of the interests of the Beneficiaries and the Liquidation Trustee shall apply great care to comply with the requirements of this Section 3.6.

3.7. Compliance with Laws. Any and all distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.8. Special Limitations for Major Decisions. Pursuant to the Plan, the Creditors' Committee and TKCA may each designate one person as a Liquidation Committee ("LC") Member under this Agreement. The Liquidation Trustee has all authority for managing the affairs of the Trust as set forth in this Agreement, except as to Major Decisions as defined herein  and shall consult with the Liquidation Committee Members regarding Major Decisions and such other matters as the Liquidation Trustee chooses or a Liquidation Committee Member requests. The Liquidation Trustee and the Liquidation Committee Members shall meet within thirty days following the Effective Date and not less than annually thereafter, to discuss the financial condition of the Trust, appropriate reserves and establish a budget for the upcoming twelve-month period. A Major Decision requires the majority consent of the Liquidation Trustee and Liquidation Committee Members. Absent majority consent, consenting Liquidation Committee Member or Liquidation Trustee shall be entitled to seek court intervention, after notice to the Liquidation Trustee and each Liquidation Committee Member, and a hearing, to obtain approval of a Major Decision. Except as set forth in this Section 3.8, no Liquidation Committee Member shall have any express or implied authority, obligation or benefit under this Agreement or pertaining to the Trust or the Trust Assets (except with respect to benefits as a Beneficiary). Under no circumstances shall a Liquidation Committee Member or its agents or professionals be compensated from the Trust Assets for services relating to the Trust or this Agreement.

a) Court Approval.  Notwithstanding anything contained in this Agreement, the Plan,

QB\39900383.2

{00053691.000/00674653.DOCX / 2}14

or the Confirmation Order, the Liquidation Trustee must seek Court approval of any compromise of a Claim or cause of action involving an amount in controversy that exceeds $100,000 on its face.

b) Major Decisions. "Major Decisions" that require the majority consent of the Liquidation Committee Members and the Liquidation Trustee comprise the following: (1) buying, selling, leasing, borrowing money, and/or granting liens or other encumbrances on trust estate property, (3) pursuing, compromising, or settling causes of action in favor of the trust estate in excess of $100,000 on its face, and (4) compromising or settling claims against the trust estate in excess of $100,000 including, proofs of claim. Nothing contained in the Plan, the Confirmation Order, or this Agreement prohibits any member of the Liquidation Committee or the Liquidation Trustee from bringing an issue or dispute to the attention of the Court, including any dispute regarding the decisions of the Liquidation Trustee and/or the Liquidation Committee. Furthermore, notwithstanding anything herein to the contrary, at the initial LC meeting, the Liquidating Trustee shall identify all potential claim objections he intends to file and shall obtain LC approval of same. If any Committee Member wishes to file and prosecute a claim objection that the Liquidating Trustee does not intend to pursue, it may do so at its own cost and expense. Any settlement of such an objection shall still be subject to bankruptcy court approval and an opportunity for notice and hearing.

4. THE LIQUIDATION TRUSTEE

4.1. Generally.

a) The Liquidation Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidation Trust and not otherwise, except that the Liquidation Trustee may arrange for payment of its reasonable fees and expenses from the Trust Assets as limited and permitted herein.

b) The provisions of this Agreement relating to the Liquidation Trust are intended to create a trust and a trust relationship and are to be governed and construed in all

{00053369.000}/00674653.DOCX / 2}1.5

respects as a trust. The Liquidation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidation Trustee or Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Liquidation Trust and the Liquidation Trustee shall be solely that of beneficiaries of a trust to a trust and its trustee and shall not be deemed a principal and agency relationship, and the rights of the Beneficiaries shall be limited to those conferred upon them by this Agreement.

4.2. Manner of Acting. The Liquidation Trustee shall oversee the liquidation of the Trust Assets in good faith and in a cost-effective manner in a reasonable time, with due regard for the risk that undue litigation may minimize the liquidation proceeds. The Liquidation Trustee shall make continuing efforts to dispose of the Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidation Trust. In overseeing the selling of the Trust Assets, or otherwise monetizing them, the Liquidation Trustee shall use its best efforts to maximize the amount of the proceeds derived therefrom. The liquidation of the Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or Causes of Action, or otherwise subject to the terms of the Plan. The Liquidation Trust shall hold any and all proceeds generated from such Trust Assets. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidation the Trust Assets.

4.3. Status of Liquidation Trustee. The Liquidation Trustee shall be the representative of the Estates within the meaning of Section 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided for in the Bankruptcy Code in addition to any rights and powers granted in this Agreement and in the Plan (acting in such capacity, the "Estate Representative").

4.4. Causes of Action:  Subject to the provisions of  3.8 (b) the Liquidation Trustee, in its capacity as Estate Representative, shall have discretion to pursue or not to pursue any

QB\39900383.2
{00003369.000/00674653/DCX /210}

and all Causes of Action, as it determines are in the best interests of the Beneficiaries and consistent with the specific authority of the Liquidation Trust, and shall have no liability for the outcome of its decision. With respect to any Cause of Action, the Liquidation Trust and the Liquidation Trustee shall be bound by, and shall give effect to, any release, exculpation, waiver, estoppel or injunction, including, without limitation, any of the foregoing, provided by the Plan or the Confirmation Order,

4.5. Compensation and Reimbursement of Liquidation Trustee and Professionals.

    a)    The Liquidation Trustee shall be compensated for services in the administration of the Liquidation Trust and, in its capacity as Estate Representative, the administration of the Debtor' Estates, at hourly rates of $0 to $350.

    b)    Any professionals retained by the Liquidation Trustee will be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such professional or entity on an hourly basis, at the standard billing rates in effect at the time of service, or such other hourly rate that is reasonable. All reasonable out-of-pocket expenses incurred by such professionals retained by the Liquidation Trustee will be reimbursable as an expense of the Liquidation Trust.

4.6. Tenure, Removal, and Replacement of the Liquidation Trustee. The authority of the Liquidation Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until the termination of the Trust (as described in Section 5.1, below) or earlier if a successor is named by action of the Bankruptcy Court. A replacement Liquidation Trustee may be named upon the death or resignation of the current Liquidation Trustee. Any Trust Beneficiary or Liquidation Committee member may file a motion seeking for cause to replace the Liquidation Trustee, and any such motion must be approved by an order of the bankruptcy court.

4.7. Continuance of Trust. The death, resignation, or removal of the Liquidation Trustee shall not operate to terminate the Trust created by this Agreement.

4.8. Discharge of Liquidation Trustee.

    a)    Statement of Discharge. The Liquidation Trustee shall upon termination of the Liquidation Trust render a final report (the "Final Report"), which shall contain the following information:

QB\39900383.2

{00053691000\00674653.DOCX / 2}1

i.    all assets and funds of the Trust originally charged under the Liquidation Trustee's control;

ii.    a summarized accounting, in sufficient detail, of all purchases sales, gains, losses, and income in connection with the Trust during the Liquidation Trustee's term of service; and

iii.    the ending balance of all assets and funds of the Trust as of the date of discharge.

b)    Approval of Statement of Discharge. The Liquidation Trustee's Final Report, shall be filed with the Bankruptcy Court along with a motion for approval of the Final Report and discharge of the Liquidation Trustee, and notice that any objections are due 30 days later. If approved by the Bankruptcy Court, the withdrawing Liquidation Trustee shall be discharged from all liability to the Liquidation Trust or any entity who has had or may then or thereafter have an interest in the Liquidation Trust for acts or omissions in the Liquidation Trustee's capacity as the Liquidation Trustee or in any other capacity contemplated by this Trust Agreement.

## 5. DURATION OF LIQUIDATION TRUST

5.1. Duration of Liquidation Trust.    The Liquidation Trust shall terminate on the later of the liquidation of all assets of the Trust and payment or distribution of all funds required to be paid under the terms of the Plan or this Agreement, or the date which is five years after the Effective Date. Notwithstanding the foregoing, the Liquidation Trustee may, if it is in the best interests of Trust Beneficiaries, and subject to the approval of the Bankruptcy Court based on a finding that an extension is necessary to the purpose of the Liquidation Trust, extend the term of the Liquidation Trust for one or more finite periods based upon the particular facts and circumstances at that time (each, an "Extension Period"), provided that each Extension Period is requested by the Liquidation Trustee before expiration of the Liquidation Trust term (as it may then have been extended).

5.2. Continuance of Liquidation Trust for Winding Up.    After the termination of the Liquidation Trust, as it may then have been extended, and for the purpose of

{00053369.000}\00674653\&cx72318

Liquidation and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until it has fully executed its duties pursuant to the Plan and this Agreement (including, without limitation its duties as the Estate Representative). Upon distribution of the entire Trust Assets, and unless ordered otherwise by the Bankruptcy Court, the Liquidation Trustee shall retain for a period of two (2) years the books, records, Beneficiary lists, Register, and certificates and other document and files which shall have been delivered to or created by the Liquidation Trustee. Subject to the Final Decree, at the Liquidation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidation Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidation Trust, and final distribution of the entire Trust Assets, the Liquidation Trustee shall have no further duties or obligations hereunder.

6.  INDEMNIFICATION; LIMITATIONS ON LIABILITY

6.1. General Indemnification. The Liquidation Trust shall indemnify and hold harmless any entity who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such entity is or was the Liquidation Trustee or a member of the Liquidation Committee, or an employee of the Liquidation Trust or LC, or an employee, contractor, agent, attorney, accountant or other professional for the Liquidation Trustee or LC, against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of such entity's willful misconduct, fraud or gross negligence. Costs or expenses incurred by any such entity in defending any such action, suit or proceeding may be paid by the Liquidation Trust in advance of the institution or final disposition of such action, suit or proceedings, if authorized by the Liquidation Trustee.

6.2. Limited Recourse. Except as provided in the Plan and this Agreement, no recourse

QB\39900383.2

{00005389.000/00674653.DOCX / 2}19

shall ever be had, directly or indirectly, against the Liquidation Trustee personally or against any employee, contractor, agent, attorney, accountant or other professional retained by the Liquidation Trustee in accordance with the terms of this Agreement or the Plan, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee in implementation of this Agreement or the Plan, or by reason of the creation of any indebtedness by the Liquidation Trustee under the Plan for any purpose authorized by this Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of the Liquidation Trust, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Liquidation Trustee may be held liable for its gross negligence, fraud or willful misconduct.

6.3. Limited Liability. The Liquidation Trustee shall not be liable while acting in good faith and in the exercise of his reasonable judgment for any act he may do or omit to do as the Liquidation Trustee (in either his capacity as Liquidation Trustee or as Estate Representative), provided that the Liquidation Trustee may be held personally liable for acts or omissions constituting gross negligence, fraud or willful misconduct. Notwithstanding anything else herein to the contrary, in no event shall the Liquidation Trustee have any liability for making a determination in accordance with Section 3.2(z) hereof.

6.4. Limited Liability of the Estate Representative.    For the avoidance of doubt, the provisions of Sections 6.1, 6.2 and 6.3 hereof, to the extent applicable, shall include the Liquidation Trustee acting in its capacity as Estate Representative and the members of the Liquidation Committee acting in their capacity set forth under this Trust Agreement (whom shall have all protections under the referenced Sections as related to any vote or decisions rendered in fulfillment of their duties hereunder).

7. REPORTS TO BENEFICIARIES

7.1. Tax and Other Reports to Beneficiaries.

a)     Other Reporting.      The Liquidation Trustee shall prepare and file on a timely basis the quarterly    post-confirmation reports required    by Bankruptcy  Code Section 1106(a)(7) and U.S. Trustee Guidelines, and serve them on the U.S. Trustee and any entity requesting a copy in writing.

b)     Calculations; Source of Distributions.      The Liquidation Trustee shall also maintain detailed records of (i) the calculations performed by the Liquidation Trustee in respect of any distributions and disbursements made pursuant to the Plan and (ii) the accounts from which any such distributions or disbursements were made. Each report shall be sufficient to enable determination, among other things, of whether such distributions and disbursements made by the Liquidation Trustee were in compliance with the terms of the Plan.

c)     Tax Reporting.   Following the end of each calendar year, the Liquidation Trustee shall promptly submit to each Beneficiary appearing in its records during such year a separate statement setting forth the information necessary for such Beneficiary to determine its share of items of income, gain, loss, deduction, or credit and will instruct each Beneficiary to report such items on its federal income tax returns (and state and local tax returns, as applicable).

8. AMENDMENT AND WAIVER

8.1. The provisions of this Agreement may only be amended by action of the Bankruptcy Court after notice to Beneficiaries.

9. MISCELLANEOUS PROVISIONS

9.1. Intention of Parties to Establish Liquidation Trust.      This Agreement is intended to create a Liquidation Trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

9.2. Preservation of Privilege and Defenses. To the full extent permitted by law, the Debtor will be deemed to irrevocably transfer to the Liquidation Trustee, as their legal

successor, all rights of the Debtor and the Estates to exercise or waive any attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral), and the Debtor and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

9.3. **Effectiveness.** This Agreement shall become effective upon the Effective Date of the Plan. Counterparts. This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

9.4. **Governing Law.** Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Arizona, without giving effect to conflict-of-law principles.

9.5. **Severability of Provisions.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provision of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

9.6. **Entire Agreement.** This Agreement (including the Recitals), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan and the Confirmation Order supersede all prior agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any entity other than the parties hereto and their respective heirs, administrators, executors, successors, or assigns any r ight to remedies under or by reason of this Agreement.

9.7. **Effect of Death, Incapacity or Bankruptcy of Beneficiary.** The death, incapacity or bankruptcy of a Beneficiary during the term of this Agreement shall not operate to terminate the Agreement, nor shall it entitle the representatives or creditors of the

deceased Beneficiary to an accounting, or to take any action in the courts or elsewhere for the distribution of the Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any Beneficiary.

9.8. Effect of Liquidation Trust on Third Parties.   There is no obligation on the part of any purchaser or purchasers from the Liquidation Trustee or any agent of the Liquidation Trustee, or on the part of any other entities dealing with the Liquidation Trustee or any agent of the Liquidation Trustee, to see to the application of the purchase money or other consideration passing to the Liquidation Trustee or any agent of the Liquidation Trustee, or to inquire into the validity, expediency or propriety of any such transaction by the Liquidation Trustee or any agent of the Liquidation Trustee.

9.9. Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

9.10.    Tax Identification Numbers. The Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee (a) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (b) such other records or documents necessary to satisfy the Liquidation Trustee's tax reporting obligation (including, but not limited to, certificates of non-foreign status). The Liquidation Trustee may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.

9.11.    Headings.   The Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

9.12.    Rules of Construction.   Except as otherwise expressly provided in this Agreement or unless the context otherwise clearly requires: (a)    References to designated sections and other subdivisions of this Agreement, such as "Section 1.4(b)," refer to the designated Section or other subdivision of this Agreement as a whole and to all subdivisions of the designated Section or other subdivision. The words "herein," "hereof," "hereto," "hereunder" and other words and phrases of similar import refer to

{00005389.000/00674653.DOCX / 2}23

this Agreement as a whole and not to any particular Section or other subdivision of this Agreement. (b)   Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements, replacements or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the date of this Agreement. (c)    Any party may perform any of the requirements under this Agreement either directly or through others, and the right to cause something to be done rather than doing it directly shall be implicit in every requirement under this Agreement. Unless a provision is restricted as to time or limited as to frequency, all provisions under this Agreement are implicitly available from time to time. (d)      The term "including" and ail its variations mean "including, but not limited to." Except when used in conjunction with the word "either," the word "or" is always used inclusively (for example, the phrase "A or B" means "A or B or both," not "either A or B but not both"). (e)     All accounting terms used in an accounting context and not otherwise defined shall be construed in accordance with generally accepted accounting principles. (f) In the computation of a period from a specified date to a later specified date or an open-ended period, the word "from" means "from and including" and the words "to" or "until" mean "to but excluding." Likewise, in setting deadlines or other periods, "by" means "on or before," and "after" means "from and after."

## 10. SECTION 10. DEFINITIONS

10.1.     For purposes of this Agreement capitalized terms will have the definitions indicated. Capitalized terms not defined herein will have the meanings stated in the Plan. If there is a conflict with the definition of a term, the Plan will control.

10.2.     All terms defined in this Agreement shall have the defined meanings when used in any certificate or other document made or delivered pursuant hereto unless otherwise defined therein.

IN WITNESS WHEREOF, the Liquidation Trustee and the Trustee have duly executed this Agreement as of  May___, 2016.

_____

{00003369.000}/00674653.DOCX / 2}24

QB\39900383.2

Louie Mukai,

Chapter 11 Trustee

_____

Louie Mukai

Liquidation Trustee

{00053369.0001/00674653.DOCX / 2}25